UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MALIBU MEDIA, LLC,                      :        Case No. 1:14-cv-718
                                        :
      Plaintiff,                        :        Judge Timothy S. Black
                                        :
vs.                                     :
                                        :
RYAN RAMSEY,                            :
                                        :
      Defendant.                        :

**ORDER TO SHOW CAUSE**

This civil action is before the Court *sua sponte*.

## I.      STATEMENT OF THE CASE

Like it has in hundreds of cases in this district and thousands nationwide, Plaintiff

Malibu Media, LLC filed a complaint in this civil action on September 9, 2014 against a

John Doe Defendant identified only by an Internet Protocol address ("IP address"). (Doc.

1). Malibu Media alleged that the internet subscriber assigned IP address 65.189.59.1

used the BitTorrent file distribution network to infringe thirty-two of Malibu Media's

copyrighted works. (*Id.*) Specifically, Malibu Media owns copyrights for pornographic

movies. (*Id.*, Ex. A).

Simultaneously with filing its complaint, Malibu Media filed a motion for leave to

serve a third-party subpoena prior to a Rule 26(f) conference. (Doc. 2). Malibu Media

and its contractors are able to identify the IP address of an alleged infringer, which is

assigned by the subscriber's Internet Service Provider ("ISP"), as well as the subscriber's

ISP and approximate geographic location. However, only the ISP knows the identity of

the subscriber assigned a specific IP address, information the ISP will not voluntarily provide to third parties such as Malibu Media.  Accordingly, Malibu Media can only obtain the subscriber's identity by serving the ISP with a third-party subpoena.  The Court granted the motion for leave on September 12, 2014.  (Doc. 6).

Subsequently, Malibu Media filed an amended complaint naming Defendant on December 15, 2014.  (Doc. 7).  The Clerk issued a summons on December 16, 2014. (Doc. 8).  On January 7, 2015, Malibu Media moved for an extension of time to complete service of process.  (Doc. 9).  The Court granted the motion and ordered Malibu Media to complete service of process by February 7, 2015.

On February 10, 2015, Malibu Media filed a second motion for extension of time to complete service of process.  (Doc. 10).  Malibu Media represented to the Court its request for an extension of time was supported by good cause because after issuance of the summons on December 16, 2014, "Plaintiff immediately instructed its process server to begin attempting to serve the Defendant.  To date, despite the process server's efforts, the Defendant has not been served.  Plaintiff has made attempts to contact the Process Server to obtain a list of attempted dates and can supply the court with same upon receipt."  (*Id.* at 2).  The Court granted the extension of time and ordered Malibu Media to complete service of process by March 7, 2015.

Malibu Media failed to timely file proof of service or seek another extension of time.  On March 12, 2015, the Court issued an Order to Show Cause, directing Malibu Media to show cause why its amended complaint should not be dismissed for failure to effect timely service of process by the March 7, 2015 deadline.  (Doc. 11).  On March 18,

2015, Malibu Media filed a summons return and an application for Clerk's entry of default.  (Docs. 12, 13).  The affidavit of process server Kevin Allen states that he personally served Defendant at Defendant's home on January 26, 2015.  (Doc. 12).  This directly contradicts counsel's representation in the February 10, 2015 motion that "despite the process server's efforts, the Defendant has not been served."  (Doc. 10 at 2).

On March 19, 2015, Malibu Media filed a response to the Order to Show Cause. (Doc. 14).  Malibu Media acknowledged that Defendant was served prior to filing its second motion for extension of time, but explained that it "did not receive the affidavit of service from the process server before February 7."  (*Id.*)   However, Malibu Media did not file its motion until three days later on February 10, 2015.  (Doc. 10).  Malibu Media does not indicate when it received the affidavit from the process server and why it only filed the same after the Court issued the Order to Show Cause.  Additionally, Malibu Media fails to explain its inability to communicate with its process server, both before and after filing the second motion for extension of time.

If Defendant was served on January 26, 2015, his answer was due on February 17, 2015.  Accordingly, Defendant defaulted on February 18, 2015 for his failure to timely answer, defend, or otherwise respond.  However, Malibu Media waited a full month after Defendant was in default to file proof of service, and only after the Court issued an Order to Show Cause because the docket provided no indication that service had already been completed.

The much delayed filing of the summons return simultaneously forced the Court to unnecessarily expend judicial resources in the issuance of an Order to Show Cause and

hindered the ability of the Court to manage its docket.  With respect to the filing of an answer or other matters dependent on the date of service of process, the Court's ability to actively manage its docket is entirely dependent on counsel filing a summons return within a reasonable amount of time.  This process is incalculably hindered if the Court is unable to rely on the representations of counsel for basic procedural matters such as whether service of process has been completed.

## II.     FAILURE TO PROSECUTE

### A.     Relevant Background

The Court does not view Malibu Media's conduct in this action in isolation. Rather, the Court views it as part of an unmistakable pattern that has emerged in other actions before this Court and in context of observations made by multiple other federal judges in cases involving Malibu Media.

This Court has observed the conduct of Malibu Media and its counsel of record in over 60 cases filed in this District in the past twelve months.  This is not the first case in which Malibu Media has filed a summons return well after the date of service.[1]  Nor is it the only case in which counsel appears to have made a misrepresentation in seeking an extension of time to complete service.[2]  The Court also issued an order to show cause

---

[1] *Malibu Media, LLC v. Tobergta*, 1:14-cv-556 (service completed September 16, 2014, summons return filed November 18, 2014); *Malibu Media, LLC v. Jablonki*, 1:14-cv-417 (challenged service completed September 19, 2014, and summons return filed November 18, 2014); *see also Malibu Media v. Downs*, 1:14-cv-707 (service completed January 8, 2015, Order to Show Cause issued February 9, 2015, and summons return filed February 10, 2015).

[2] *Malibu Media, LLC v. Jablonki*, 1:14-cv-417 (motion for extension of time filed on September 15, 2014 included identical language that "[u]pon receipt of the issued summons, Malibu Media immediately instructed its process server to begin attempting to serve the Defendant.  To date,

after counsel publicly filed a defendant's name in direct violation of two orders unambiguously ordering counsel to file that information under seal.[3]

Malibu Media asserts that it is necessary to invoke the Court's subpoena power to "propound discovery in advance of a Rule 26(f) conference." (Doc. 2 at 4). However, not a single one of these 60 cases has ever progressed to a Rule 26(f) conference. In fact, most cases are voluntarily dismissed by Malibu Media pursuant to Rule 41(a)(1)(A)(i) without obtaining a summons, but presumably after Malibu Media has used the third-party subpoena to obtain a settlement.[4] The name of the IP subscriber is never provided to the Court in these voluntarily dismissed cases. This makes it impossible for this Court or any other court to determine, for example, if a later action should be dismissed with prejudice under Rule 41(a)(1)(B). In the few cases such as this in which a defendant has appeared with counsel, counsel have raised numerous allegations of impropriety and abusive litigation tactics.[5] The Court is not blind to the reality that these allegations likely substantially underrepresent the amount of misconduct that goes unreported by defendants who simply pay Malibu Media's settlement demand rather than face the

---

despite the process server's efforts, the Defendant has not been served." However, the process server indicated he first received the summons on September 15, 2014).

[3] *Malibu Media v. Doe*, 1:14-cv-493 (Doc. 27).

[4] Malibu Media often claims that it will dismiss an action if its "investigation" reveals that the internet subscriber is likely not the infringer. However, Malibu Media has provided this Court with no basis to conclude that any action was dismissed for this reason.

[5] For example, two defendants have asserted that they were not served with a copy of the summons. *Malibu Media v. Jablonski*, 1:14-cv-417 (Doc. 13); *Malibu Media, LLC v. Tobergta*, 1:14-cv-556 (Doc. 11).

prospect of expensive and extensive litigation regarding their purported interest in pornography.

The Court is aware that Malibu Media, through separate local counsel, has filed thousands of similar cases in federal courts across the country. A copyright troll has been defined as "an owner of a valid copyright who brings an infringement action not to be made whole, but rather as a primary or supplemental revenue stream." *Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 189 n.1 (D. Mass. 2012) (quoting James DeBriyn, *Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages*, 19 UCLA Ent. L. Rev. 79, 86 (2012)). Under this definition, Malibu Media certainly qualifies. However, Malibu Media generally responds to this allegation by pointing to comments of the trial judge in the so-called bellwether trial as unassailable proof that its intentions and tactics differ from other entities that bring copyright infringement actions related to pornographic movies. *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779 (E.D. Pa. 2013).[6] The greater weight of experience suggests otherwise.

As aptly observed several years ago, "[a] great number of similar cases have been filed in the past several months in this and other District Courts, many of which appear to be simply using the federal courts as an avenue to collect money." *Malibu Media, LLC v. John Does 1-64*, No. 2:12-cv-1262, 2012 WL 4835317, at *2 n.3 (E.D. Cal. Oct. 10, 2012). Courts soon began to comment on "the growing concern about unscrupulous

---

[6] That court defined a copyright troll as "a non-producer who merely has acquired the right to bring lawsuits against alleged infringers." *Id.* at 780.

tactics used by certain plaintiffs, particularly in the adult films industry, to shake down the owners of specific IP addresses from which copyrighted adult films were allegedly downloaded." *Malibu Media, LLC v. Does 1-5*, No. 12-cv-2950, 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012). What quickly emerged were "clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants. Indeed, this may be the principal purpose of these actions, and these tactics distinguish these plaintiffs from other copyright holders with whom they repeatedly compare themselves." *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 89 (E.D.N.Y. 2012) (consolidated cases involving Malibu Media and two similar entities).

One of the first abusive tactics that courts addressed and successfully eradicated was Malibu Media's so-called "swarm joinder" model of filing a single mass action against dozens or even hundreds of John Doe Defendants who allegedly downloaded the same movie. *See, e.g.*, *Malibu Media, LLC v. Does 1-23*, 878 F. Supp. 2d 628, 631-33 (E.D. Va. 2012). The actions are almost identical:

> The Court is familiar with lawsuits like this one. These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits.

> The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an

extortion scheme, for a case that plaintiff has no intention of bringing to
trial.

*Malibu Media, LLC v. Does 1-10*, No. 2:12-cv-3623, 2012 WL 5382304, at \*4 (C.D. Cal.
June 27, 2012). A consensus among federal courts quickly emerged that swarm joinder
was inappropriate under Rule 20(a)(2) because each defendant's alleged copyright
infringement was a separate and distinct transaction. *See, e.g.*, *Malibu Media, LLC v.
Does 1-11*, 286 F.R.D. 113-115-16 (D.D.C. 2012).

In addition to the impropriety of these mass actions under Rule 20, courts also
observed that Malibu Media likely had an ulterior motive:

> Finally, the Court is troubled by many aspects of this "swarm joinder"
> model for copyright litigation. Courts across the country have observed
> that Plaintiff (and other companies involved in this type of litigation) do not
> seem interested in actually litigating their copyright claims. Rather, they
> appear to be using the federal courts only to obtain identifying information
> for the ISP owners and then attempting to negotiate a quick settlement.

*Malibu Media, LLC v. Does 1-54*, No. 12-cv-1407, 2012 WL 3030302, at \*5 (D. Colo.
July 25, 2012).[7] Malibu Media's repeated contention that mass actions promoted judicial
economy only helped in revealing its true motivation: "the only economy that litigating
these cases as a single action would achieve is an economy to plaintiff—the economy of
not having to pay a separate filing fee for each action brought." *Malibu Media, LLC v.*

---

[7] *See also Malibu Media, LLC v. Does*, 923 F. Supp. 2d 1339, 1345-46 (M.D. Fla. 2013) ("[A]
number of courts have expressed concern that plaintiffs in this type of litigation have no interest
in actually pursuing their legal claims, but instead are using the court system to obtain the
identifying information and coerce settlement from putative defendants in lieu of being named in
a lawsuit which alleges the illegal downloading of a pornographic film. All four John Doe
Defendants make this argument in their Motions and suggest that Plaintiff and Plaintiff's counsel
have engaged in such coercive tactics.").

*Does 1-28*, 295 F.R.D. 527, 534 (M.D. Fla. 2012).  When quantified, the economic

benefits to Malibu Media removed all doubt:  "In the seven multi-defendant cases in the

Peoria Division of the Central District of Illinois, the Plaintiffs paid $2450 in filing fees.

In those same seven cases, there are 97 John Doe defendants.  Had these cases been filed

as single defendant cases, the Plaintiffs would have paid nearly $34,000 in filing fees."

*In re BitTorrent Copyright Infringement Cases*, No. 12-cv-1188, 2013 WL 501443, at *6

(C.D. Ill. Feb. 11, 2013) (noting that Malibu Media was responsible for five of the seven

cases and 61 defendants).[8]

Malibu Media's next abusive litigation tactic, the attachment of Exhibit C to its

complaints, prompted federal district courts in the Eastern and Western Districts of

Wisconsin to impose sanctions on Malibu Media and its local counsel.  Exhibit C listed

pornographic movies with particularly graphic and explicit titles that the defendant

allegedly downloaded, but were neither copyrighted by Malibu Media nor part of its

infringement works.  *Malibu Media LLC v. Doe*, No. 13-cv-207, 2013 WL 4821911, at *1

(W.D. Wis. Sept. 10, 2013).  In stark contrast to the "relatively tame names" of Malibu

Media's copyrighted movies listed in Exhibit B, "the list on Exhibit C consistently

includes far more disturbing lewd, unusual and unredacted titles of pornographic films

allegedly also downloaded by the defendant."  *Id.*

The Western District of Wisconsin led the way, thoroughly and persuasively

rebuffing Malibu Media's proffered legitimate litigation purposes for attaching Exhibit C

---

[8] *See also, e.g.*, *Malibu Media, LLC v. Does 1-28*, 295 F.R.D. 527, 534 (M.D. Fla. 2012) ("By
filing a single lawsuit against twenty-eight defendants, Malibu has paid only $350 in filing fees,
rather than the $9,800 it would have paid if the lawsuits had been brought separately.").

as "disingenuous." *Malibu Media LLC*, 2013 WL 4821911, at *1.  The court concluded

that Malibu Media's "intent was to harass and intimidate defendants into early

settlements by use of the salacious nature of others' materials, rather than the merit of its

own copyright claims." *Id.*  After finding that "there exists no good basis upon which a

reasonable attorney—subject to the ethical rules and restrictions of Rule 11—could

conclude that attachment of Exhibit C to a complaint 'for evidentiary purposes only'

served any legitimate purpose at that stage of the litigation," the court turned to counsel's

subjective intent.  *Id.* at 4.  Similarly, that too was found lacking in good faith:  "While

the court agrees with Malibu Media that there is only circumstantial evidence of ill intent,

Malibu Media's denials do not pass the smell test, and any denial of improper motive by

its counsel does not pass the laugh test."  *Id.*

     Notwithstanding Malibu Media's legitimate copyright infringement claims, the

court observed that "these internet copyright infringement cases already give off an air of

extortion" such than any "objectively reasonable attorney" would recognize the

possibility that an innocent defendant could feel compelled to settle a meritless suit

simply to avoid becoming publicly associated with pornographic films.  *Malibu Media*

*LLC*, 2013 WL 4821911, at *5.  The inclusion of Exhibit C served only to exacerbate the

risk of extrajudicial misconduct while providing no parallel benefit to the merits of

Malibu Media's copyright infringement claims.  *Id.*  With no legitimate litigation

justification, the court felt that Malibu Media had strayed too close to the line of abusing

the judicial process:  "The court's subpoena power may not be leveraged further by

counsel to force earlier, larger settlements through explicit references to the alleged

10

misuse of even more outrageous or potentially embarrassing materials copyrighted by a non-client." *Id.*

Building upon this analysis, the Eastern District of Wisconsin similarly found that "the entirety of Malibu Media's litigation conduct strongly suggests that Exhibit C was filed for an improper purpose." *Malibu Media, LLC v. Doe*, No. 13-cv-536, 2013 WL 6579338, at *4 (E.D. Wis. Dec. 12, 2013). Viewed in context of Malibu Media's prior conduct and with no plausible argument that Exhibit C furthered a legitimate litigation goal, the inescapable conclusion was that Malibu Media filed Exhibit C with the intent to increase the federal judiciary's unwitting participation in a glorified shake down:

> Malibu Media has the legal right to enforce its copyrights, but the sheer number of lawsuits corroborates the Court's belief that Exhibit C was being filed to coerce quick and early settlements. Malibu Media explains that at the beginning of 2013, it stopped suing people in joined suits and began to sue defendants on an individual basis. Malibu Media portrays this as a voluntary decision to focus on "persistent on-line infringers," but in reality, Malibu Media was forced to pursue individual defendants because courts began rejecting its attempts to prosecute "same-swarm joined" cases against multiple defendants. . . . Thus, the widespread use of Exhibit C can be viewed as a concerted attempt to recoup some of the efficiency that was lost when courts started rejecting Malibu Media's attempts to pursue multi-defendant lawsuits. Whatever the reason, these types of cases are already infected with the potential for abuse, and Malibu Media doubled-down by threatening to publicly associate infringers with extreme pornographic works having no relevance to its own copyrights. <u>Malibu Media and its counsel should not be allowed to abuse the legal system in this manner without being called to account for it.</u>

*Id.* Finally, the court found it unavailing that Malibu Media had taken corrective action in that particular case or that Malibu Media had purported to eliminate Exhibit C from its arsenal of coercive litigation tactics utilized in courts across the country. *Id.* Malibu Media's superficial showing of self-imposed penance was wholly outweighed by its

status as a repeat offender: "Obviously, the use of Exhibit C is (or was) part of an overall pattern of abusive litigation practices. <u>Malibu Media is a sophisticated litigant, so it should not be allowed to avoid sanctions simply by adapting its tactics after being questioned by multiple federal judges</u>." *Id.*

Notwithstanding Malibu Media's contention that it "instructed counsel nationwide to never file Exhibit C with a complaint again," *Malibu Media, LLC*, 2013 WL 6579338, at *4, this Court has borne witness to the fact that Malibu Media has simply evolved this practice rather than eradicate it. In an Order issued in a separate case on October 6, 2014, this Court *sua sponte* noted a continued vestige of Exhibit C in several paragraphs of Malibu Media's complaint. *Malibu Media v. Doe*, No. 1:14-cv-383, 2014 WL 4986467, at *5-6 (S. D. Ohio Oct. 6, 2014). Instead of attaching Exhibit C, Malibu Media adapted its practice and now made an explicit reference to a document with "additional evidence" that the defendant had distributed a large number of third-party files through BitTorrent. *Id.* at 5. Malibu Media disingenuously offered to produce this document to the Court with the seemingly off-handed remark that "many of the titles to the third party works may also be relevant to proving Defendant is the infringer because they correlate to the Defendant's hobbies, profession, or other interests." *Id.* Citing the two Wisconsin district court cases that imposed sanctions for attaching Exhibit C, the Court struck the offending paragraphs from the complaint and ordered Malibu Media to file a conforming amended complaint forthwith. *Id.* at 6. Two months later, Malibu Media voluntarily dismissed the action without filing an amended complaint.

The Court concurs with the following sentiment:

> Malibu certainly has the right to protect its copyright, assuming it owns a protectable copyrighted work, by bringing infringement actions against those it believes engaged in infringing conduct. It is the manner in which Malibu has chosen to prosecute those cases which is problematic, not the nature of the cause of action.

*Malibu Media, LLC v. Does 1-28*, 295 F.R.D. 527, 535 (M.D. Fla. 2012).[9] The Court will not deny Malibu Media its right to enforce its copyrights. However, the Court will also not sit idly by as Malibu Media continues to flaunt the procedural rules and uses the Court's subpoena power as leverage to extort settlements, while not proceeding to a Rule 26(f) conference in any of the over 60 actions before this Court. "Malibu Media is a sophisticated litigant, so it should not be allowed to avoid sanctions simply by adapting its tactics after being questioned by multiple federal judges." *Malibu Media, LLC*, 2013 WL 6579338, at *4.

**B.      Legal Standard**

"Rule 41(b) of the Federal Rules of Civil Procedure confers on district courts the authority to dismiss an action for failure of a plaintiff to prosecute the claim or to comply with the Rules or any order of the court." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008). "This measure is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-

---

[9] *See also Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 190 (D. Mass. 2012) ("While it is without question that a valid copyright holder is entitled to seek protection of its intellectual property in federal court, it appears that in at least some of these cases, adult film companies may be misusing the subpoena powers of the court, seeking the identities of the Doe defendants solely to facilitate demand letters and coerce settlement, rather than ultimately serve process and litigate the claims.").

supported courts and opposing parties." *Knoll v. AT&T*, 176 F.3d 359, 363 (6th Cir.

1999). The Court should consider four factors:

> (1) whether the party's failure is due to willfulness, bad faith, or fault;
> (2) whether the adversary was prejudiced by the dismissed party's conduct;
> (3) whether the dismissed party was warned that failure to cooperate could
> lead to dismissal; and (4) whether less drastic sanctions were imposed or
> considered before dismissal was ordered.

*Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005).

A finding of willfulness, bad faith, or fault requires "a clear record of delay or

contumacious conduct." *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013).

Contumacious conduct means behavior that is "perverse in resisting authority" and

"stubbornly disobedient." *Schafer*, 529 F.3d at 737 (quoting *Webster's Third New*

*International Dictionary* 497 (1986)). To support this finding, the plaintiff's conduct

"must display either an intent to thwart judicial proceedings or a reckless disregard for

the effect of his conduct on those proceedings." *Wu*, 420 F.3d at 643.

"[M]ere dilatory conduct involving a failure to file a specified document" is

generally not sufficient to support dismissal for failure to prosecute. *Coston v. Detroit*

*Edison Co.*, 789 F.2d 377, 379 (6th Cir. 1986). However, a finding that a party "willfully

h[e]ld up the proceedings to gain a tactical advantage" would support dismissal. *Kemp v.*

*Robinson*, 262 F. App'x 687, 691 (6th Cir. 2007). Malibu Media's repeated conduct

across these actions, including the delayed filing of the summons return and a

misrepresentation made in support of a motion for extension of time in this action, could

amount to contumacious conduct.

14

Prejudice to a defendant from a plaintiff's lack of prosecution typically occurs only if the defendant is "required to waste time, money, and effort in pursuit of cooperation which the plaintiff was legally obligated to provide." *Carpenter v. City of Flint*, 723 F.3d 700, 707 (6th Cir. 2013).

On March 12, 2015, the Court issued an Order to Show Cause directing Malibu Media to show cause in writing "why the amended complaint should not be dismissed without prejudice for failure of service of process." (Doc. 11 at 2). Malibu Media timely responded. (Docs. 12, 13, 14). Accordingly, this Order provides Malibu Media with the requisite notice that this action could be dismissed with prejudice pursuant to Rule 41(b).

"[T]he sanction of dismissal is appropriate only if the attorney's actions amounted to failure to prosecute and no alternative sanction would protect the integrity of the pretrial process." *Schafer*, 529 F.3d at 738. However, this Court is not required "to incant a litany of the available lesser sanctions." *Harmon*, 110 F.3d at 368. Given the sheer number of actions Malibu Media files and its penchant for voluntary dismissal, the Court questions whether an alternative sanction would protect the integrity of the pretrial process.

The Court generally should not dismiss an action "merely to discipline an errant attorney because such a sanction deprives the client of his day in court." *Buck v. U.S. Dep't of Agric.*, 960 F.2d 603, 608 (6th Cir. 1992).[10] For example, in *Kemp*, dismissal with prejudice based on counsel's delay was not justified because there was no evidence

_____

[10] *See also Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980) ("Dismissal is usually inappropriate where the neglect is solely the fault of the attorney.").

that the client "sanctioned, authorized, or even had knowledge of his counsel's alleged laggard conduct." *Kemp*, 262 F. App'x at 692.

Here, and in the dozens of other actions before the Court, there is ample evidence that Malibu Media or its "outside general counsel," rather than its local counsel of record, selects the litigation strategy and tactics.[11]  Accordingly, the general principle that "directly sanctioning the delinquent lawyer rather than an innocent client" may not apply here. *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1095 (6th Cir. 1994).  The Court of Appeals has held that "just as a lawyer's inadvertence cannot constitute good cause, neither can inadvertence on the part of the lawyer's clerical staff; the omissions of the agent are chargeable to the principal." *Davis v. Brady*, No. 92-6300, 1993 WL 430137, at *3 (6th Cir. Oct. 22, 1993).  Accordingly, "secretarial negligence in serving defendant is chargeable to counsel." *Friedman*, 929 F.2d at 1157 (citing *Hart v. United States*, 817 F.2d 78, 81 (9th Cir. 1987))).  Similarly, secretarial negligence will not excuse making misrepresentations or failing to promptly file a summons return.

This Court possesses "substantial discretion in managing its docket and determining whether a delay results in unnecessary burdens on the court." *Richter v. Am. Aggregates Corp.*, 522 F. App'x 253, 260 (6th Cir. 2013).  Dismissal with prejudice implicates two competing concerns:

---

[11] *See Malibu Media v. Doe*, 1:14-cv-493 (Doc. 29, Ex. A) (an e-mail from a paralegal at Lipscomb, Eisenberg & Baker, a Miami law firm described as Malibu Media's "outside general counsel," that attached documents and instructed local counsel of record to file the documents "as usual").  The Court is also not ignorant to the likely fact that only local counsel enters an appearance to avoid paying the Court's $200 fee for admission *pro hac vice*.

> On the one hand, there is the court's need to manage its docket, the public's interest in expeditious resolution of litigation, and the risk of prejudice to a defendant because the plaintiff has failed to actively pursue its claims. On the other hand is the policy which favors disposition of cases on their merits.

*Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993). In the more than 60 Malibu Media cases before this Court, Malibu Media has not shown any indication that it intends to prosecute the merits of its copyright infringement claims.[12]

Malibu Media is hereby advised that the Court proposes to dismiss this action with prejudice pursuant to Rule 41(b) for failure to prosecute and failure to comply with the Federal Rules of Civil Procedure based on, *inter alia*, Malibu Media's unexplained delay in filing its summons return and for making a misrepresentation in support of its second motion for extension of time.[13]

### III.    RULE 11 SANCTIONS

Federal Rule of Civil Procedure 11 provides a "district court the discretion to award sanctions when a party submits to the court pleadings, motions or papers that are presented for an improper purpose, are not warranted by existing law or a nonfrivolous extension of the law, or if the allegations and factual contentions do not have evidentiary

---

[12] A single trial almost two years ago against three defendants, all of whom admitted to liability and two of whom settled as to damages prior to trial, is of little relevance to the present inquiry. *Malibu Media v. Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 786-87 (E.D. Pa. 2013).

[13] As is its right, Malibu Media has filed hundreds of actions to enforce its copyrights. Those actions necessarily create a number of deadlines each with distinct but related facts and procedural histories. Malibu Media often implores that it should be treated no differently than any other litigant. The Court requires all litigants to diligently prosecute their claims and expects all representations from counsel to be truthful or promptly corrected. Malibu Media will not be heard to rely on the numerous deadlines and closely related facts that necessarily arise from filing this number of actions as an excuse for failing to meet these standards that apply to all litigants.

17

support." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002). The purpose of a Rule 11 sanction is "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

In determining whether to impose a Rule 11 sanction, the Court should consider factors such as "whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; . . . [and] whether the person has engaged in similar conduct in other litigation." Fed. R. Civ. P. 11 (advisory committee notes). In fashioning an appropriate sanction, consideration is given to "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants." *Id.*

The test for Rule 11 sanctions is "whether the individual's conduct was reasonable under the circumstances." *Mihalik v. Pro Arts, Inc.*, 851 F.2d 790, 792 (6th Cir. 1988). Sanctions may be warranted if, *inter alia*, the Court finds that counsel made "unfounded factual, not legal, contentions." *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997).

Here, the record indicates that on February 10, 2015, Malibu Media's counsel represented that service had not yet occurred. (Doc. 10 at 2). However, it is clear that Defendant was served on January 26, 2015. (Doc. 12). Counsel made no attempt to correct this statement until after the Court issued an Order to Show Cause regarding the apparent failure to complete service of process.

The Court concludes that Rule 11 sanctions are not appropriate in this instance. However, Malibu Media, its counsel of record, and its outside general counsel are advised that repetition in this or any other action will support the conclusion that imposing monetary sanctions are the only effective method of providing deterrence.

## IV.    CONCLUSION

Wherefore, for these reasons, Malibu Media is **ORDERED** to show cause in writing within **FOURTEEN DAYS** of the entry date of this Order why the amended complaint should not be dismissed with prejudice pursuant to Rule 41(b).  Malibu Media shall support its response with verified statements from persons with direct personal knowledge.

**IT IS SO ORDERED**.

Date:  5/26/2015                              */s/Timothy S. Black*
                                             Timothy S. Black
                                             United States District Judge